Filed 6/13/16  P. v. Jones CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>ANTIONE JONES,<br><br>　　　　Defendant and Appellant. | B265402<br><br>(Los Angeles County<br>Super. Ct. No. MA062984) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Andrew E. Cooper, Judge.  Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, and Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Antione Jones appeals from his judgment of conviction of battery with injury on a peace officer (Pen. Code,[1] § 243, subd. (c)(2)) and resisting an executive officer by means of threat or violence (§ 69).  On appeal, Jones argues that his battery with injury on a peace officer conviction must be reversed because the evidence was insufficient to support a finding that he inflicted an injury within the meaning of the statute.  We affirm.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

#### I.     The Charges

In an information, the Los Angeles County District Attorney charged Jones with one count of battery with injury on a peace officer (§ 243, subd. (c)(2)), and two counts of resisting an executive officer by means of threat or violence (§ 69).  It also was alleged that Jones had one prior serious or violent felony conviction (§§ 667, subds. (b)-(j), 1170.12) and had served two prior prison terms (§ 667.5, subd. (b)).  Jones pleaded not guilty to each charge and denied the enhancement allegations.

#### II.     Prosecution Evidence

On May 11, 2014, Melodie Siedenburg held a party for her grandchildren at her home in Palmdale, California.  During the party, a boy who lived next door threw large rocks over the fence and almost hit Siedenburg's young grandchild in the head.  The boy also cursed at Siedenburg's family.  Siedenburg contacted the local sheriff's department to report the disturbance.

At about 6:45 p.m., Los Angeles County Sheriff's Deputies Jason Trevillyan and Mourad Kabanjian responded to Siedenburg's home.  Both deputies were in uniform and arrived in marked patrol vehicles.  After speaking with Siedenburg, the deputies went to the home next door and counseled the children who answered the door.  The deputies then spoke with Jones, who was present in the home, and asked him for his name and date of birth.  Jones falsely identified himself as "Antione Williams" and repeatedly

---

[1]    All further statutory references are to the Penal Code.

misrepresented his date of birth. When the deputies were unable to confirm Jones's identity through the information he provided, they escorted him to a patrol car so that he could be identified with a portable fingerprint reader. After running Jones's fingerprints through their computer system, the deputies were able to obtain a photograph of Jones, along with his correct name and date of birth.

Once the deputies ascertained his true identity, Jones became visibly nervous and began backing away from them. He also glanced from side to side and appeared to be preparing to flee. As the deputies approached, Jones took an aggressive stance with his fists clenched at chest level. The deputies grabbed Jones by his arms as he struggled to escape their grasp. They then forced Jones to the ground on his stomach and ordered him to place his hands behind his back. Jones continued to resist, cursing at the deputies and pulling his arms under his body. At one point, a neighbor from across the street came over and assisted the deputies in holding Jones's legs to keep him from kicking. Deputy Trevillyan also used his knee to strike Jones in the rib cage to try to control him. Because Jones was resisting the officers, Deputy Trevillyan made a radio request for additional units to respond to the scene.

During the struggle, Deputy Kabanjian placed his right hand on Jones's shoulder as he was holding Jones face down on ground. Jones turned his head toward Deputy Kabanjian's hand and bit the deputy's right thumb. The bite caused Deputy Kabanjian to sustain a quarter-inch cut to his thumb, which was bleeding.

Deputies Trevillyan and Kabanjian ultimately were able to gain control over Jones and to handcuff his hands behind his back. The deputies then held Jones on the ground until the additional units arrived. Sergeant Marion Tucker was the first officer to respond to the radio call, and she videotaped the incident from the time of her arrival.[2] At Sergeant Tucker's command, the deputies picked up Jones from the ground, searched him and escorted him to a patrol car. While sitting in the patrol car, Jones was able to slip his

---

[2]     At trial, two videotaped recordings made by Sergeant Tucker were played for the jury as Deputy Trevillyan testified about the series of events depicted in the recordings.

handcuffs to the front of his waist, creating a risk to officer safety. As the deputies attempted to re-handcuff Jones outside the car, he again became uncooperative and refused to comply with their orders. After issuing a warning, Deputy Trevillyan used pepper spray on Jones, but he continued to resist. In response, Deputies Trevillyan and Kabanjian forced Jones to the ground a second time, and other officers assisted in restraining his legs. During this second struggle, Jones grabbed Deputy Kabanjian's injured thumb, which increased the pain in the deputy's hand. Deputy Kabanjian and another officer ordered Jones to let go of the deputy's hand, and Jones complied. After restraining Jones, the deputies carried him back to the patrol car. Jones was then transported to the hospital.

Following Jones's arrest, Deputy Kabanjian wrapped his thumb and applied pressure to the area. He also informed Sergeant Tucker that he had been bitten. Deputy Trevillyan took a photograph of Deputy Kabanjian's injured thumb shortly after the incident, but he did not personally witness how the injury occurred. At Sergeant Tucker's direction, Deputy Kabanjian went to the hospital, where a doctor cleaned the wound and wrapped it with a Band-Aid; no stitches were required. The doctor also gave Deputy Kabanjian an antibiotic ointment with instructions to apply the ointment once or twice a day and keep the area wrapped with a Band-Aid. The doctor did not order any laboratory tests or follow-up appointments for Deputy Kabanjian.

## III.   Defense Evidence

Jones's mother testified on his behalf. She stated that, upon arriving at the scene, she saw Jones on the ground with several deputies on top of him. Jones was screaming and appeared to be in pain. Jones's mother never saw him punch or kick anyone during the incident, and she believed he could not have physically done so because the deputies had him fully restrained on the ground.

**IV.     Verdict and Sentencing**

The jury found Jones guilty as charged on each of the three counts.  Following his admission of the prior conviction allegations, Jones was sentenced to a total term of nine years and four months in state prison.

## DISCUSSION

On appeal, Jones challenges the sufficiency of evidence supporting his conviction for battery with injury on a peace officer in violation of section 243, subdivision (c)(2). Jones specifically contends that the evidence was insufficient to support a finding that he inflicted an injury on Deputy Kabanjian that required professional medical treatment.

**I.     Standard of Review**

To assess a claim of insufficient evidence in a criminal case, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt.  [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.]  'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]'  [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict.  [Citation.]"  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

**II.    Jones's Conviction for Battery with Injury on a Peace Officer Was Supported by Substantial Evidence**

Section 243, subdivision (c) provides that a battery is punishable by a $10,000 fine and up to three years in state prison when it is committed against a peace officer engaged in the performance of his or her duties and an injury is inflicted on that victim. (§ 243, subd. (c)(2).) Section 243, subdivision (f) defines the term "injury" as "any physical injury which requires professional medical treatment." (§ 243, subd. (f)(6).)

As this court explained in *People v. Longoria* (1995) 34 Cal.App.4th 12 (*Longoria*): "What the statute prescribes as a qualifying injury is an injury which '*requires* professional medical treatment.' It is the nature, extent, and seriousness of the injury -- not the inclination or disinclination of the victim to seek medical treatment -- which is determinative. A peace officer who obtains 'medical treatment' when none is required, has *not* sustained an 'injury' within the meaning of section 243, subdivision (c). And a peace officer who does *not* obtain 'medical treatment' when such treatment is required, *has* sustained an 'injury' within the meaning of section 243, subdivision (c). The test is objective and factual." (*Id*. at p. 17; see also *In re Michael P.* (1996) 50 Cal.App.4th 1525, 1528-1529 (*Michael P.*) ["There is no requirement in the statute the victim of the battery actually receive medical treatment. The language in [section 243,] subdivision (f)(6) merely defines the degree of the injury."].)

In *Longoria*, the officer was kicked in the groin and sustained cuts to his fingers and hand during a struggle with the appellant. The officer went to the hospital where x-rays of his hand were taken, no broken bones were shown. As a result of his injuries, however, the officer could not hold his firearm, had difficulty unwrapping his holster, and was placed on restrictive duty for three to five days. (*Longoria*, *supra*, 34 Cal.App.4th at pp. 15-16.) We concluded that there was "substantial evidence from which a rational trier of fact could have found that [the officer's] injuries required professional medical treatment." (*Id*. at p. 18.) We accordingly affirmed the appellant's conviction for battery with injury on a peace officer in violation section 243, subdivision (c)(2).

6

Similarly, in *People v. Lara* (1994) 30 Cal.App.4th 658 (*Lara*), the officer bruised both his knees, sustained numerous cuts and abrasions on hands, and was exposed to the appellant's blood during an altercation. The officer went to the emergency room where medical personnel "cleaned his wounds, gave him supplies for scrubbing himself later, 'checked out [his] knees to make sure there was no ligament damage or anything[,]' and 'treated the contusions on [his] knees.'" (*Id*. at p. 667.) In affirming the appellant's conviction for battery with injury on a peace officer, the court of appeal concluded that the evidence of the medical treatment that the officer received was sufficient to support a finding that he suffered an injury within the meaning of section 243. (*Id*. at pp. 667-668.)

In contrast, in *Michael P.*, this court concluded that there was insufficient evidence to establish that the appellant inflicted an injury on a peace officer in violation of section 243, subdivision (c). (*Michael P.*, *supra*, 50 Cal.App.4th at p. 1530.) At trial, the officer testified that the appellant kicked him in the chest and chin, which caused soreness but no bruising. The officer did not seek medical treatment, and no one took photographs of his injuries or prepared a medical report about his injuries. (*Id*. at p. 1528.) In testifying, the officer did not describe how hard he was kicked or provide any further detail about his soreness. (*Id*. at p. 1529.) Recognizing that section 243 "measures culpability by the seriousness of the inflicted injury," we concluded that the officer's "failure to further describe his injuries [was] fatal to respondent's position the evidence was indeed sufficient to support [a] finding of battery with injury on a peace officer." (*Ibid*.) In reaching this conclusion, we distinguished our prior decision in *Longoria* on the ground that "the officer in that case testified in detail about the seriousness of the injury," whereas the officer in the present case provided no such testimony. (*Id*. at p. 1530.)

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence was sufficient to support a finding that Jones inflicted an injury on Deputy Kabanjian in violation of section 243, subdivision (c)(2). Deputy Kabanjian testified that, during the initial struggle on the ground, Jones bit his right thumb. The bite broke the skin and caused it to bleed, resulting in an open wound. During the second struggle that unfolded as Jones was being re-handcuffed, Jones grabbed Deputy

7

Kabanjian's injured thumb, aggravating a painful burning sensation in the deputy's thumb. Jones did not release his grip in response to Deputy Kabanjian's command, and another officer had to order Jones to let go before Jones complied. After Jones was taken into custody, Deputy Kabanjian wrapped his thumb with a napkin and applied pressure to the area. He also had a photograph of the wound taken at the scene. In addition to describing the nature and extent of the injury to his thumb, Deputy Kabanjian testified about the medical treatment that he received for the injury following the incident. In accordance with department protocol, Deputy Kabanjian sought treatment at a hospital because he had sustained a human bite, which could potentially place him at risk for a communicable infectious disease. At the hospital, a doctor examined the deputy's thumb, cleaned the wound and then wrapped it with an adhesive bandage. The doctor also prescribed an antibiotic ointment to apply to the wound once or twice a day.

On appeal, Jones argues that the doctor's failure to order any laboratory tests supports an inference that the bite did not actually break the skin. However, Deputy Kabanjian specifically testified that the bite did break the skin and caused it to bleed while he was still at the scene. Based on such testimony, the jury reasonably could have inferred that Jones's saliva came into contact with an open wound on Deputy Kabanjian's thumb and thus placed the deputy at risk for the transmission of an infectious disease. The fact that the doctor did not perform other affirmative acts after cleaning and dressing the wound is not determinative of whether Deputy Kabanjian suffered a qualifying injury for purposes of section 243. (See *Lara*, *supra*, 30 Cal.App.4th at p. 667 [concluding that appellant's construction of injury as "'sufficiently severe a physician would recommend or perform affirmative acts in intervention, such as minor surgery, suturing, skin grafts, administration of prescription medicines or the like'" was "unreasonably narrow"].)

We likewise reject Jones's claim that the evidence was insufficient to support a finding of injury because Deputy Kabanjian's testimony about being bitten was not corroborated by other witnesses. While neither Deputy Trevillyan nor Sergeant Tucker personally observed Jones inflicting the injury, Deputy Kabanjian's account of the bite was corroborated by photographic evidence of his injured thumb shortly after the

8

incident. Moreover, "[u]nless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction." (*People v. Elliott* (2012) 53 Cal.4th 535, 585; see also *People v. Richardson* (2008) 43 Cal.4th 959, 1030-1031 ["testimony of a single witness is sufficient for the proof of any fact"].) In this case, the totality of the evidence presented at trial was sufficient to support a finding that Deputy Kabanjian sustained an injury which required medical treatment within the meaning of section 243. Jones's conviction for battery with injury on a peace officer was therefore supported by substantial evidence.

## DISPOSITION

The judgment is affirmed.

ZELON, J.

We concur:

PERLUSS, P. J.

BLUMENFELD, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.